**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; NATURAL RESOURCES DEFENSE COUNCIL; and PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, <br><br>       Petitioners, <br><br> v. <br><br> LEE ZELDIN, in his official capacity as U.S. Environmental Protection Agency Administrator; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and MICHAEL MARTUCCI, in his official capacity as Acting Regional Administrator for EPA Region IX, <br><br>       Respondents. | Case No. _____ |

**PETITION FOR REVIEW**

Pursuant to Clean Air Act Section 307(b)(1), 42 U.S.C. § 7607(b)(1), Federal Rule of Appellate Procedure 15(a), and Ninth Circuit Rule 15-1, Sierra Club, Center for Biological Diversity, Natural Resources Defense Council, and Public Employees for Environmental Responsibility hereby petition this Court for review of the final action of

1

Respondents Lee Zeldin, Administrator, United States Environmental

Protection Agency (EPA); United States EPA; and Michael Martucci,

Acting Regional Administrator for EPA Region IX; entitled

*Determination of Attainment by the Attainment Date But for*

*International Emissions for the 2015 Ozone National Ambient Air*

*Quality Standards; Phoenix-Mesa Nonattainment Area, Arizona* and

published in the Federal Register at 91 Fed. Reg. 13777 (Mar. 23, 2026).

A copy of EPA's final action is attached as Exhibit A.

Dated May 22, 2026.

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz
Ameya Gehi
Earthjustice
1125 17th Street, Suite 1010
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
agehi@earthjustice.org

David Baron
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 745-5203
dbaron@earthjustice.org

*/s/ Patrick Woolsey*
Patrick Woolsey
Sierra Club Environmental Law
Program

2

2101 Webster Street Suite 1300
Oakland, CA 94612
(415) 977-5757
patrick.woolsey@sierraclub.org

*Counsel for Petitioner Sierra Club*

*/s/ Abirami Vijayan*
Abirami Vijayan
Meredith Hankins
Natural Resources Defense Council
1152 15th St. NW #300
Washington, DC 20005
(202) 836-9866
avijayan@nrdc.org
mhankins@nrdc.org

*Counsel for Petitioner Natural
Resources Defense Council*

*/s/ Ryan Maher*
Ryan Maher
Center for Biological Diversity
1411 K Street, NW, Suite 1300
Washington, DC 20005
(781) 325-6303
rmaher@biologicaldiversity.org

*Counsel for Petitioners Center for
Biological Diversity and Public
Employees for Environmental
Responsibility*

3

## <u>LIST OF RESPONDENTS UPON WHOM THE CLERK OF THE COURT SHOULD SERVE THIS PETITION</u>

Pursuant to Federal Rule of Appellate Procedure 15(c) and Ninth Circuit Rule 15-1, Petitioners list the following respondents requiring service of the Petition for Review:

Lee Zeldin
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
WJC Building North/South Room: 1101A
Washington, D.C. 20460

Michael Martucci
Acting Region IX Administrator
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

Todd Blanche
Acting Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Correspondence Control Unit
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2026, the foregoing Petition for Review and the attached Exhibit A were electronically filed with the Clerk of Court of the U.S. Court of Appeals the Ninth Circuit through the appellate CM/ECF system.

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz

# EXHIBIT A

the EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. Therefore, this action is not subject to Executive Order 13045 because it merely approves state law as meeting federal requirements. Furthermore, the EPA's Policy on Children's Health does not apply to this action.

*I. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

*J. National Technology Transfer and Advancement Act (NTTAA)*

Section 12(d) of the NTTAA directs the EPA to use voluntary consensus standards in its regulatory activities unless to do so would be inconsistent with applicable law or otherwise impractical. The EPA believes that this action is not subject to the requirements of section 12(d) of the NTTAA because application of those requirements would be inconsistent with the CAA.

*K. Congressional Review Act (CRA)*

This action is subject to the Congressional Review Act, and the EPA will submit a rule report to each House of Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

*L. Petitions for Judicial Review*

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by May 22, 2026. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this rule for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements (see section 307(b)(2)).

**List of Subjects in 40 CFR Part 52**

Environmental protection, Administrative practice and procedure, Air pollution control, Incorporation by reference, Intergovernmental relations, Nitrogen dioxide, Ozone, Particulate matter, Reporting and recordkeeping requirements, Sulfur dioxide, Volatile organic compounds.

**Authority:** 42 U.S.C. 7401 *et seq.*

Dated: March 11, 2026.

**Michael Martucci,**

*Acting Regional Administrator, Region IX.*

For the reasons stated in the preamble, the Environmental Protection Agency amends part 52, chapter I, title 40 of the Code of Federal Regulations as follows:

**PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS**

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

**Subpart F—California**

■ 2. Section 52.220 is amended by adding paragraphs (c)(600)(i)(A)(*9*) and (c)(631) to read as follows:

**§ 52.220   Identification of plan—in part.**

*   *   *   *   *

(c) * * *

(600) * * *

(i) * * *

(A) * * *

(*9*) Previously approved on June 30, 2023, in paragraphs (c)(600)(i)(A)(*3*)–(*7*) of this section and now deleted with replacement in paragraphs (c)(631)(i)(A)(*1*)–(*5*) of this section: Rule 1301, ''New Source Review Definitions''; Rule 1302, ''New Source Review Procedure'' (except subsections (C)(5) and (C)(7)(c)); Rule 1303, ''New Source Review Requirements''; Rule 1304 ''New Source Review Emissions Calculations''; and Rule 1305, ''New Source Review Emission Offsets''; all of which were amended on March 22, 2021.

*   *   *   *   *

(631) The following regulations were submitted electronically on August 7, 2024, by the Governor's designee as an attachment to a letter dated August 7, 2024.

(i) *Incorporation by reference.* (A) Mojave Desert Air Quality Management District.

(*1*) Rule 1301, ''New Source Review Definitions,'' amended on March 25, 2024.

(*2*) Rule 1302, ''New Source Review Procedure,'' (except subsections 1302(C)(5) and 1302(C)(7)(c)), amended on March 25, 2024.

(*3*) Rule 1303, ''New Source Review Requirements,'' amended on March 25, 2024.

(*4*) Rule 1304, ''New Source Review Emissions Calculations,'' amended on March 25, 2024.

(*5*) Rule 1305, ''New Source Review Emissions Offsets,'' amended on March 25, 2024.

(B) [Reserved]

(ii) [Reserved]

*   *   *   *   *

■ 3. Section 52.248 is amended by adding paragraph (n) to read as follows:

**§ 52.248   Identification of plan—conditional approval.**

*   *   *   *   *

(n) The EPA is conditionally approving the California State Implementation Plan (SIP) for Mojave Desert for the 2008 ozone NAAQS, 2015 ozone NAAQS, and 1987 $PM_{10}$ NAAQS with respect to the nonattainment New Source Review requirements of CAA section 173. The conditional approval is based on a commitment from the Mojave Desert Air Quality Management District (District) in a letter dated June 12, 2025, to adopt a specific rule revision, and a commitment from the California Air Resources Board (CARB) dated June 17, 2025, to submit the amended District rule to the EPA within 12 months of the effective date of the final conditional approval. If the District or CARB fail to meet their commitments within one year of the effective date of the final conditional approval, the conditional approval is treated as a disapproval.

[FR Doc. 2026–05591 Filed 3–20–26; 8:45 am]

**BILLING CODE 6560–50–P**

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 52**

**[EPA–R09–OAR–2025–2833; FRL–13057–02–R9]**

**Determination of Attainment by the Attainment Date But for International Emissions for the 2015 Ozone National Ambient Air Quality Standards; Phoenix-Mesa Nonattainment Area, Arizona**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA or ''Agency'') is taking final action to determine that the Phoenix-Mesa nonattainment area (''Phoenix-Mesa area'') would have attained the 2015 ozone national ambient air quality standards (NAAQS or ''standards'') by the August 3, 2024 ''Moderate'' area attainment date, but for emissions emanating from outside the United States. As a consequence of this action, the Phoenix-Mesa area is not

subject to the Clean Air Act (CAA) requirements pertaining to reclassification upon failure to attain and remains classified as a Moderate nonattainment area for the 2015 ozone NAAQS. This final action fulfills the EPA's statutory obligation to determine whether the Phoenix-Mesa area attained the NAAQS by the attainment date. As a result of this final action, the State is no longer required to submit attainment and reasonable further progress (RFP) contingency measures for this area.

**DATES:** This rule is effective March 23, 2026.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R09–OAR–2025–2833. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available through *https://www.regulations.gov,* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional availability information. If you need assistance in a language other than English or if you are a person with a disability who needs a reasonable accommodation at no cost to you, please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section.

**FOR FURTHER INFORMATION CONTACT:** Karina O'Connor, EPA Region IX, 75 Hawthorne St., San Francisco, CA 94105; telephone number: (415) 972–3498; email address: *oconnor.karina@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document, the use of ''Agency,'' ''we,'' ''us,'' or ''our'' refers to the EPA.

**Table of Contents**

I. Summary of the EPA's Proposed Action
II. Public Comments and EPA Responses
III. Final Action
IV. Statutory and Executive Order Reviews

## I. Summary of the EPA's Proposed Action

On November 19, 2025, the EPA proposed to find that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS of 0.070 parts per million (70 parts per billion (ppb)) by the Moderate area attainment date of August 3, 2024, but for emissions emanating from outside the United States, and is

therefore not subject to the CAA requirements pertaining to reclassification upon failure to attain.[1] We briefly summarize the proposal in this section.

CAA section 181(b)(2)(A) requires that within six months following the applicable attainment date, the EPA shall determine whether an ozone nonattainment area attained the ozone standard based on the area's Design Value (DV) as of that date. If the EPA determines that an area failed to attain, then CAA section 181(b)(2)(A) requires the area to be reclassified by operation of law to the higher of: (1) the next higher classification for the area, or (2) the classification applicable to the area's DV as of the determination of failure to attain. CAA section 181(b)(2)(B) of the CAA requires the EPA to publish the determination of failure to attain and accompanying reclassification in the **Federal Register** no later than six months after the attainment date.

The EPA originally designated and classified the Phoenix-Mesa area as a Marginal ozone nonattainment area for the 2015 ozone NAAQS with an attainment date of August 3, 2021.[2] On October 7, 2022, the EPA determined that the Phoenix-Mesa area did not attain the standard by the Marginal attainment date, and thus the area was reclassified as Moderate by operation of law, with an attainment date of August 3, 2024.[3] Because a DV for this NAAQS is based on the three most recent, complete calendar years of data, attainment must occur no later than December 31 of the year prior to the attainment date (*i.e.,* December 31, 2023, in the case of Moderate nonattainment areas for the 2015 ozone NAAQS with an August 3, 2024 attainment date). Therefore, the EPA's determination for the Phoenix-Mesa area is based in part upon the complete, quality assured, and certified ambient ozone air monitoring data from calendar years 2021, 2022, and 2023. The DV for this period is 80 ppb, indicating that the Phoenix-Mesa area did not attain the 2015 ozone NAAQS of 70 ppb by its August 3, 2024 attainment date.

CAA section 179B(b) provides that where a state demonstrates to the Administrator's satisfaction that an ozone nonattainment area would have attained the NAAQS by the applicable attainment date but for emissions emanating from outside the United States, that area shall not be subject to the provisions of CAA section

181(b)(2).[4] In the event an air agency does not demonstrate to the Administrator's satisfaction that it would have attained the NAAQS but for international emissions, CAA section 179B(b) does not excuse that area from the provisions of CAA section 181(b)(2).

On September 24, 2025, the Maricopa Association of Governments (MAG) submitted to the EPA for review the ''MAG 2025 Clean Air Act Section 179B(b) Retrospective Demonstration of the Impact of International Emissions on Ozone Concentrations in the Maricopa Nonattainment Area'' (''Demonstration'').[5] Using several lines of evidence, MAG evaluated the extent to which ambient ozone levels in the Phoenix-Mesa area have been affected by international emissions. The Demonstration includes a conceptual model of ozone formation in the Phoenix-Mesa area including a discussion of the meteorological and topographic conditions that influence ozone formation, modeling to quantify international contribution, information about precursor emissions and ozone air quality trends, and an analysis of the transport patterns influencing the area. In addition, MAG provided information to support the exclusion of data from days that it found to be ''atypical wildfire exceedance days'' from the calculation of the base DV and the relative response factors used to quantify the international contribution in the modeling.

On November 19, 2025, the EPA proposed to find that MAG established to the satisfaction of the Administrator that, consistent with CAA section 179B(b), the Phoenix-Mesa area would have attained the 2015 ozone NAAQS by the Moderate area attainment date of August 3, 2024, but for emissions emanating from outside the United States, and is therefore not subject to the provisions of CAA section 181(b)(2)(A) and therefore would not be reclassified based on failure to attain.[6] The EPA also proposed that, if the Agency were to finalize the proposed CAA section 179B(b) determination, the State would no longer be required to submit contingency measures under CAA

---

[1] 90 FR 52019.

[2] 83 FR 25776 (June 4, 2018), effective August 3, 2018.

[3] 87 FR 60897.

[4] Note that the statute cites to 42 U.S.C 7511(a)(2), but that provision establishes ozone attainment deadlines for severe areas under the 1-hour standard. The EPA has long interpreted the citation in CAA section 179B(b) to be a scrivener's error that was supposed to refer to 42 U.S.C. 7511(b)(2), which refers to consequences for failure to attain by the attainment date. See 57 FR 13498, 13569, n. 41 (April 16, 1992).

[5] Letter dated September 24, 2025, from Ed Zuercher, Executive Director, MAG, to Lee Zeldin, Administrator, EPA.

[6] 90 FR 52019.

section 172(c)(9) for the Phoenix-Mesa 2015 ozone nonattainment area.

Please see our proposed rule and the associated technical support documents (TSDs)[7] for more information concerning the background for this action and for a more detailed discussion of our evaluation of the Demonstration and the rationale for our determination that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS by the Moderate area attainment date of August 3, 2024, but for emissions emanating from outside of the United States. These documents are included in the docket for this action.

## II. Public Comments and EPA Responses

The EPA's proposed action provided a 30-day public comment period. The comment period opened on November 19, 2025, the date of publication in the **Federal Register**, and closed on December 19, 2025. During this period, we received a total of 69 comment submissions, 19 of which were supportive of our proposed action, and 48 that were opposed. Two comment submissions did not express either support or opposition. The EPA has prepared a response to comments document (RTC) that summarizes and responds to germane comments we received on this rulemaking. The RTC and all comments received are included in the docket for this rulemaking.

Commenters supporting the proposed rulemaking agreed with the proposed determination that MAG had demonstrated that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS but for international emissions. These commenters also supported the determination that, if the EPA finalized the determination, the State would no longer be required to submit attainment and RFP contingency measures. MAG also provided additional information supporting the Demonstration as a part of its comments on the proposal.

A number of commenters requested that the EPA use this rulemaking to issue national guidance for areas affected by international emissions and provided specific legal rationales and recommendations for implementing 179B. We appreciate these comments and understand the desire for issuance

of guidance regarding the implementation of CAA section 179B; however, as noted in the proposal, this rulemaking is applicable only to the Phoenix-Mesa area. Therefore, comments and recommendations related to potential future nationally applicable guidance for CAA section 179B are outside the scope of this action.

The EPA also received comments opposing the proposed rulemaking. Some commenters expressed overall opposition to the proposal, while others specifically challenged the Agency's legal interpretations of the CAA and prior rulemakings, the EPA's policy direction, and the adequacy of technical aspects of the Demonstration. Several commenters also opposed the proposal that the State would not be required to submit attainment or RFP contingency measures if the EPA finalizes the proposal on this issue. Commenters opposing the proposal also provided additional information supporting their arguments. In the following paragraphs, we provide a brief summary of our responses regarding some of the key issues raised in adverse comments.

We do not agree with assertions by some commenters that the proposal failed to provide a sufficient explanation for any changes in policy and interpretation of CAA section 179B(b). Under *FCC* v. *Fox Television Stations, Inc.,* an agency's change in policy is permissible if the agency acknowledges the change, believes it to be better, and "show[s] that there are good reasons for the new policy."[8] As explained further in responses III.B.1. and III.B.3. of the RTC, the EPA has both acknowledged any changes in interpretation and policy and provided justification for those changes based on the wording of CAA section 179B(b). As noted in the proposal, we no longer consider specific characteristics as necessarily suggesting the need for a more detailed demonstration with additional evidence. We also no longer consider the weight of evidence more compelling when a CAA section 179B demonstration shows that international contributions are larger than when a demonstration shows that domestic contributions exceed international contributions.[9] Finally, we proposed to find that states will no longer be expected to show that they could not attain with on-the-books measures and potential reductions associated with controls required to be implemented by the attainment date in order to qualify for approval of a 179B(b)

determination.[10] With respect to the proper interpretation of the statute, the EPA explained its proposed view of the statute's requirements as relevant to this decision.

We also do not agree with comments opposing our proposed determination that, following a final determination under CAA section 179B(b), the State would no longer be required to submit contingency measures for the Phoenix-Mesa 2015 ozone nonattainment area. As described in response III.B.2. of the RTC, the commenters' arguments conflate the requirements and consequences of actions under CAA sections 179B(a) and 179B(b), ignore the exemption from milestone compliance demonstrations requirements for Moderate Ozone nonattainment areas in CAA section 182(g), and improperly rely on CAA section 172(e).

In addition, we do not agree with comments asserting that CAA section 179B applies only to "International border areas" based on the section's heading. While "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute" they will not "override the plain words" of a statute.[11] The plain words of CAA section 179B(b) make the provision available to "any State" that meets the relevant requirements and do not limit its application to border areas. Thus, even though the heading of the section could suggest that it only applies to a subset of areas along international borders, the statutory language within the section does not explicitly limit it to a subset of states or areas. That interpretation is consistent with the plain meaning of the term "any."[12] As further explained in response III.C. of the RTC, the commenters' other arguments regarding the purpose and legislative history of the provision similarly cannot overcome the plain text of the Act.

Finally, we do not agree with comments arguing that there was insufficient technical basis for approval of the Demonstration. As discussed in the proposal, the 179B(b) TSD, and response IV.A. of the RTC, the EPA has considered and weighed each piece of evidence in the Demonstration. The primary piece of evidence provided by

---

[7] The EPA's "Technical Support Document for Review of Atypical Events on 2015 8-Hour Ozone Phoenix-Mesa, AZ Nonattainment Area for the 179B(b) Demonstration" ("Atypical Events TSD") and the "EPA Evaluation of the Clean Air Act Section 179B(b) Demonstration for the Phoenix-Mesa 2015 Ozone NAAQS Nonattainment Area— Modeling and Impact of International Emissions Technical Support Document" ("179B(b) TSD").

[8] 556 U.S. 502, 515 (2009).

[9] 90 FR 52019, 52023.

[10] Id.

[11] *Dubin* v. *United States,* 599 U.S. 110, 120–21 (2023) (internal citations and quotations omitted).

[12] The Supreme Court has repeatedly explained that "read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States* v. *Gonzales,* 520 U.S. 1, 5 (1997)(quoting Webster's Third New International Dictionary 97 (1976)). See also *Ali* v. *Bureau of Prisons,* 552 U.S. 214, 220 (2008).

MAG was photochemical source apportionment modeling, which indicated an international anthropogenic contribution of 14 ppb to the 2021–2023 DV in the Phoenix-Mesa area. When subtracted from the 2021–2023 DV of 80 ppb, this would be a DV that attains the 70 ppb standard. Other photochemical modeling, including zero-out modeling performed by the EPA and other zero-out modeling performed by MAG, indicated an international anthropogenic contribution of 8.5–10.0 ppb to the Phoenix-Mesa area 2021–2023 DV. Information regarding potential wildfire influence on 31 exceedance days in 2021–2023 is supportive of the overall weight of evidence, as discussed in response IV.F. of the RTC, but is not relied upon to exclude particular days from the photochemical modeling. MAG also provided emissions estimates that ozone precursor emissions in the Phoenix-Mesa area are decreasing, while emissions in Mexico are increasing. Air parcel transport provided additional qualitative evidence of influence of emissions from Mexico on the Phoenix-Mesa area. We considered and qualitatively weighed each of these analyses based on their relevance to CAA section 179B and the nature of international contributions in the Phoenix area, as described in MAG's conceptual model. After considering all of these analyses, as well as both the supportive and adverse comments, we reaffirm that the weight of evidence supports the conclusion that the 2023 ozone DVs at all monitoring sites in the Phoenix area would have been at or below 70 ppb but for the influence of international emissions. Therefore, we conclude that the State [13] has established to the satisfaction of the Administrator that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS but for emissions emanating from outside the United States.

### III. Final Action

After reviewing the Demonstration and considering all comments received during the public comment period, and based on the weight of evidence, the EPA is finalizing its determination that the State has established to the satisfaction of the Administrator that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS but for emissions emanating from outside the United States. This final action fulfills

---

[13] As explained in response III.D. of the RTC, it is appropriate for MAG to stand in the shoes of the ''State'' for purposes of CAA section 179B(b) with respect to the Phoenix-Mesa area.

the EPA's statutory obligation under CAA section 181(b)(2)(A) to determine whether the Phoenix-Mesa area attained the NAAQS by the attainment date. As a result of this final action, the State is no longer required to submit attainment and RFP contingency measures for this area. The area will remain designated nonattainment and thus the State must continue to comply with applicable requirements for a Moderate ozone nonattainment area, other than the contingency measures requirement, as discussed in responses III.B.1., III.B.2., and III.E. of the RTC.

### IV. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at *https://www.epa.gov/lawsregulations/laws-and-executive-orders.*

#### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review

This action is not a significant regulatory action and was therefore not submitted to the Office of Management and Budget (OMB) for review.

#### B. Executive Order 14192: Unleashing Prosperity Through Deregulation

Executive Order 14192 does not apply because this is not significant regulatory action and it is therefore exempted from review under Executive Order 12866.

#### C. Paperwork Reduction Act (PRA)

This action does not impose an information collection burden under the PRA. This action does not impose any information collection activities.

#### D. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action will not impose any requirements on small entities. The determination that the Phoenix-Mesa area would have attained the 2015 ozone NAAQS but for international emissions does not in and of itself create any new requirements beyond what is mandated by the CAA.

#### E. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local, or Tribal governments, or the private sector.

#### F. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the States, on the relationship between the National government and States and Tribes, or on the distribution of power and responsibilities among the various levels of government. The division of responsibility between the Federal Government and States for the purposes of implementing the NAAQS is established under the CAA.

#### G. Executive Order 13175: Coordination With Indian Tribal Governments

This action has Tribal implications. However, it will neither impose substantial direct compliance costs on federally recognized Tribal governments, nor preempt Tribal law.

The EPA has identified areas of Indian country within the Phoenix-Mesa area that would be potentially affected by this rulemaking. Specifically, the Fort McDowell Yavapai Nation, Gila River Indian Community of the Gila River Indian Reservation, Salt River Pima Maricopa Indian Community of the Salt River Reservation, and Tohono O'odham Nation have lands that are located within the boundaries of the Phoenix-Mesa area.

The EPA notified potentially affected Tribes located within the boundaries of the Phoenix-Mesa 2015 ozone nonattainment area upon publication of the proposed rule. The EPA did not receive any comments or requests for additional information from Tribes.

#### H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it does not concern an environmental health risk or safety risk.

#### I. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution, or Use

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

#### J. National Technology Transfer and Advancement Act (NTTAA)

This action does not involve technical standards.

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

*L. Petitions for Judicial Review*

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by May 22, 2026. This action may not be challenged later in proceedings to enforce its requirements (see section 307(b)(2)).

**List of Subjects in 40 CFR Part 52**

Environmental protection, Administrative practice and procedure, Air pollution control, Designations and classification, Incorporation by reference, Intergovernmental relations, Nitrogen oxides, Ozone, Reporting and recordkeeping requirements, Volatile organic compounds.

Dated: March 12, 2026.

**Michael Martucci,**

*Acting Regional Administrator, EPA Region IX.*

[FR Doc. 2026–05601 Filed 3–20–26; 8:45 am]

**BILLING CODE 6560–50–P**